Benjamin
v.
Smith.

BENJAMIN *vs.* SMITH.

An *execution*, the collection of which is delayed, will not be deemed *fraudu-
lent* as against a *junior* execution, unless the delay is caused by the inter-
ference or directions of the plaintiff in the *senior* execution.

A verdict will not be set aside, on a case made, for the cause that improper
evidence was received, if the court perceive, beyond the possibility of doubt,
that such evidence could not have had any influence upon the verdict.

Whether, in an action against the sheriff by a party claiming the proceeds of
the sales under an execution, the *landlord* of the defendant, who claimed
rent to be due to him, and to whom the sheriff paid what was demanded,
can be a witness for the sheriff, *quere.*

In an action against the sheriff for an alleged *false return* of an execution,
consisting in applying the proceeds of a sale to one execution and returning
another *nulla bona*, one of two plaintiffs in the execution to the payment of
which the money is applied is not a *competent witness* for the sheriff, al-
though the sheriff has executed to him a release, and his co-plaintiff has dis-
charged him from all liability to *contribution* under a bond of indemnity
executed by him to the sheriff.

THIS was an action on the case for a false return to an ex-
ecution, alleged to have been made by the defendant as sher-
iff of the county of Chenango, tried at the Chenango circuit
in October, 1831, before the Hon. ROBERT MONELL, one of
the circuit judges.

On the 23d October, 1827, an execution in favor of the
plaintiff against one Pliny Nichols, for $479.60, was delivered
to a deputy of the defendant of the name of *Humphrey*, by vir-
tue of which a levy was made on household furniture and
other property of Nichols, which, on the 5th February, 1828,
was sold by another deputy of the defendant of the name of
*Glover*, by virtue of the execution in favor of the plaintiff, and
also of another execution against Nichols, in favor of Elijah
Rathbone and Alvah Hunt, whereby the sheriff was directed
to levy $765,98, of debt besides costs; which latter execution
was delivered to Glover on the 28th February, 1827, un-
der which a levy was made, and an inventory of property
taken on the 9th March, 1827. The property sold for $367,
77, out of which sum the deputy paid $77,62 to one Haines,
who claimed the same to be due to him as the *landlord* of the
premises occupied by Nichols, as rent, and the residue, to wit,
$290,15, was paid to Rathbone and Hunt on account of their

execution. The execution of the plaintiff was returnd *nulla bona*, which was alleged to be a false return, on the ground that the execution of Rathbone and Hunt, by the delay in its enforcement, had lost its priority, and ought to have been treated by sheriff as *dormant* and *fraudulent* in reference to the execution of the plaintiff. On the trial of the cause, evidence was given by both parties as to the delay in enforcing the execution of Rathbone and Hunt, and the jury under the charge of the judge, found a verdict for the defendant—thereby finding that the execution was not dormant. The plaintiff moved for a new trial, alleging the verdict to be against the weight of the evidence, and complaining of the admission of incompetent witnesses. *Haines*, the landlord, was sworn and examined as a witness on the part of the defendant, to prove the rent due to him and the payment thereof by the deputy ; and *Hunt*, one of the plaintiffs in the execution alleged to be dormant, was examined as a witness in reference to the delay in the enforcement of that execution. Both these witnesses were objected to by the plaintiff as incompetent, but were admitted by the judge. In reference to the *interest* of Hunt, the following facts appeared. On the 13th May, 1828, Rathbone and Hunt executed an instrument to the sheriff, whereby they bound themselves to indemnify him for paying over to them the proceeds of the sale of Nichols' property. On the 13th December, 1828, the sheriff, on receiving a bond of indemnity from Elijah Rathbone and one Ransom Rathbone in reference to the same matter, *released* Hunt from all claims and demands whatsoever, and from all liability under the instrument executed by him and Rathbone on the 13th of May, 1828 ; and on the 17th October, 1831, (the day of the trial of this cause,) Rathbone executed to Hunt an instrument, releasing all right *to* claim *contribution* from him, in case Rathbone should be subjected to damage or loss in consequence of the bond of indemnity of 13th December, 1828, executed to the sheriff. Upon these facts being shown, the judge ruled that Hunt was a competent witness, and he was accordingly sworn and gave testimony on the part of the defendant.

UTICA,
July, 1834.

Benjamin
v.
Smith.

*B. F. Butler,* for the plaintiff.

*J. A. Spencer,* for the defendant.

*By the Court,* SUTHERLAND, J.   The action rests upon the allegation that the execution of Rathbone and Hunt had become dormant and lost its priority, and that the proceeds of the sale therefore belonged to the plaintiff, and should have been applied upon his execution.

The jury were correctly instructed by the judge that the execution of Rathbone and Hunt was fraudulent as against the plaintiff, if the delay upon it was occasioned by their interference or directions : that whether it was so occasioned or not was a question of fact for them to decide ; and that if they should find that execution to have been fraudulent, then the plaintiff would be entitled to their verdict.   The jury found a verdict for the defendant, and have of course decided the main fact upon which the action rests, against the plaintiff.   The verdict cannot be disturbed as being against the weight of evidence.   There was sufficient doubt in the case to preclude the interference of the court with the finding of the jury.

It only remains to consider the objection to the competency of *Haines* and *Hunt* as witnesses for the defendant.   The defendant, in his return to Rathbone and Hunt's execution, stated that he had paid over $77,62, part of the proceeds of the sale, to Haines, the landlord of Nichols, for rent claimed to be due, &c. ; and he called Haines as a witness to sustain this part of the return.   He was objected to, but was admitted by the judge.   Lord Ellenborough, in precisely a similar case, *Keightly* v. *Birch,* 3 Campb. 523, 2 Phil. Ev. 238, held the landlord to be an incompetent witness, on the ground that if the plaintiff were to succeed against the sheriff, the landlord would be liable to an action at the suit of the sheriff, in which the judgment against the sheriff would be evidence of special damage.   The money having been voluntarily paid by the sheriff to the landlord, with a full knowledge of all the facts in the case, I should very much question whether it could in any event be recovered.   Conceding this witness to have

been incompetent, however, it affords no ground for granting a new trial. It is one of those cases in which the court can see, beyond the possibility of doubt, that the evidence had no influence upon the verdict. It went merely to the question of damages—to reduce the amount which the plaintiff would be entitled to recover, if he should recover at all. But the jury have found that the Rathbone and Hunt execution was not fraudulent; that the defendant's return therefore was not false; which disposes of the very foundation of the plaintiff's action. The question of damages never came under their consideration. It is well settled, that a verdict will not be set aside on account of the admission of improper or incompetent evidence under such circumstances.

The objection to *Hunt* is not so free from difficulty. He was one of the plaintiffs in the dormant execution, and joined with his partner, Rathbone, in a full bond of indemnity to the plaintiff against the consequences of the application of the proceeds of the sale to their execution. This instrument recites, that Rathbone and Hunt had requested the plaintiff to return the plaintiff's execution *nulla bona,* and to apply said proceeds upon theirs: and in consideration thereof, indemnifies him against all consequences. This instrument bears date the 13th day of May, 1828. On the 13th of December following, this instrument was cancelled, and the defendant released and discharged Hunt from all liability, claims or demands, growing out of the same; and on the same day he took a new instrument of indemnity from Rathbone, with surety. On the 12th of February, 1831, Rathbone, (the partner of Hunt, the witness,) released and discharged him from all liability, claim or demand, by way of contribution or otherwise growing out of this transaction. These releases were given subsequently to the first trial of this cause, in December, 1828. 4 Wendell, 232. Hunt was not offered as a witness upon that trial. Rathbone and Hunt having indemnified the defendant, were the real parties in interest in the cause; so much so that their declarations would have been competent evidence against the defendant. 4 Campb. 38. Stark. Ev. pt. 4, p. 42. 4 Wendell, 335. If the plaintiff should succeed in this suit, they would be liable to him for his costs, 1 Wen-

UTICA,
July, 1834.

dell, 295; perhaps might also be responsible to the defend-ant's attorney for their costs, if they could not be obtained from him. If the plaintiff should recover against the sheriff, and should not be able to obtain satisfaction, I am inclined to think he might maintain an action against Rathbone and Hunt for the money paid over to them. It was not a payment voluntarily made to them by the sheriff, in the discharge of his official duty, but a payment procured by their solicitation, and upon their indemnity; whereas a verdict against the plaintiff in this action would be conclusive as to all claims against Rathbone and Hunt, in relation to this transaction. None of these interests are reached by the releases. The liability for the plaintiff's costs, if he should recover, is clear and certain, and is of itself sufficient to render the witness incompetent. *Jones* v. *Savage*, 6 Wendell, 660.

A new trial must therefore be granted.